# RESPONSE TO REQUEST FOR PRODUCTION 6



## OFFENDER WORK PERFORMANCE & PROGRAM REMOVAL/REFUSAL FORM

CN 100101
Revised 08/12/11

| Inmate name: Abrahams | Inmate number: 241224 | Facility: MWCI (MCI) |
|---|---|---|

| Current Job/Program Assignment: J-Unit Laundry | Performance Evaluation Period: 5/15/13 |
|---|---|

| Criteria | Poor | Fair | Good | Excellent |
|---|---|---|---|---|
| Attendance | ☐ | ☐ | ☐ | ☐ |
| Initiative | ☐ | ☐ | ☐ | ☐ |
| Productivity | ☐ | ☐ | ☐ | ☐ |
| Attitude | ☐ | ☐ | ☐ | ☐ |
| Overall | ☐ | ☐ | ☐ | ☐ |

Commenter: On May 10, 2013, while conducting a facility shakedown I Counselor Simford discovered two plastic containers in the laundry room. One container was labeled "Liquid Stainless Steel Cleaner & Polish" and inside this container I found mashed fruit in a liquid substance which had a foul smell. This substance is known as jailhouse pruno. The second bottle was not labeled and it was filled with a yellowish brown liquid that smelled like urine. Inmate Abrahams is the primary worker in the area and is aware that contraband is not allowed in the laundry room. The inmate is aware that all rules and regulations should be followed. Therefore, due to the contraband discovered in the laundry room inmate Abrahams is terminated from his assigned duty as the laundry worker.

| Inmate Signature: | Date: |
|---|---|
| Staff Signature: | Date: |

**The area below is to be used for a Program or Job refusal.**

| OFFERED ASSIGNMENT | PROGRAM/JOB NAME | PROGRAM CODE | 1ST Refusal | 2ND Refusal |
|---|---|---|---|---|
| Addiction Services | | | | |
| Offender Programs | | | | |
| Education | | | | |
| Job | | | | |
| Other | | | | |

I do not wish to participate in the program or activity being offered to me at this facility at this time. I may request to be placed on the wait list at a later date.

I understand that refusal of an OAP program or activity may jeopardize my eligibility for Risk Reduction Earned Credit or community release programs.

| Inmate Signature: | | Date: |
|---|---|---|
| Staff Name (Print or Type): | Staff Signature: | Date: |
| Supervisor Name (Print or Type): | Supervisor Signature: | Date: |

\*\*\* This information will be noted in the RT3 system, on the Program Activity Log, and a copy maintained in Section 6 of the Inmate Master File.

# RESPONSE TO REQUEST FOR PRODUCTION 7

```
                              DISCIPLINARY HISTORY              PAGE  001
     NUMBER:    241224   NAME: ABRAHAMS,DAVID         TOTAL TICKETS:   7
     CURRENT LOCATION:  CHESHIRE CI

       DATE    SEQ  FCLTY  OFFENSE(S)           DISPOSITION(S)       AMOUNT(S)
     09 18 2001  01   114   OUT OF PLACE          CONFINED TO QUAR/UNT 020 DAYS
                                                    FROM 00/00/00 THRU 11/23/01
                                                  SUSPENDED          060 DAYS
                                                    FROM 00/00/00 THRU 11/23/01
     09 06 2001  02   114   ASSAULT ON DOC EMPL   PUNITIVE SEGREGATION 010 DAYS
                                                    FROM 00/00/00 THRU 09/20/01
     09 04 2001  01   114   FIGHTING              PUNITIVE SEGREGATION 007 DAYS
                                                    FROM 00/00/00 THRU 09/10/01
                                                  CONFINED TO QUAR/UNT 015 DAYS
                                                    FROM 00/00/00 THRU 10/05/01
     05 14 1996  01   122   FIGHTING              PUNITIVE SEGREGATION 010 DAYS
                                                  CONFINED TO QUAR/UNT 010 DAYS
     04 07 1996  01   122   SECURITY TAMPERING    LOSS OF TELEPH. PRIV 015 DAYS
     03 21 1996  01   122   ASSAULT               PUNITIVE SEGREGATION 015 DAYS
                                                  CONFINED TO QUAR/UNT 015 DAYS
                                                  LOSS OF TELEPH. PRIV 015 DAYS
```

CDIP CO/3974  CT DEPT OF CORRECTION - DISCIPLINARY HISTORY, RE67.

TRANSACTION: 974   NUMBER: 0024124

```
                                       DISCIPLINARY HISTORY                       PAGE  002
       NUMBER:    241224   NAME: ABRAHAMS,DAVID                      TOTAL TICKETS:   7
       CURRENT LOCATION:  CHESHIRE CI

       DATE    SEQ  FCLTY  OFFENSE(S)                  DISPOSITION(S)          AMOUNT(S)
    11 22 1995  01   121   DISORDERLY CONDUCT          LOSS OF RECREATION      015 DAYS
                                                       SUSPENDED               030 DAYS
```

CZQB 09/19/14  CT DEPT OF CORRECTION - DISCIPLINARY HISTORY, RT67.
DISCIPLINARY DISPLAYS -
TRANSACTION: RT67   NUMBER: 00241224

# RESPONSE TO REQUEST FOR
# PRODUCTION 11

```
MOVEMENTS      NUMBER:  241224     NAME:  ABRAHAMS,DAVID           PAGE   1
FILE:  CHESHIRE CI                 MED FILE:
                                   DATE   SEQ    LOCATION        JUR STA
TRANSFER AMONG DOC LOCATIONS       6/25/2013 1  125 CHESHIRE CI   125  G
TRANSFER AMONG DOC LOCATIONS       4/28/2005 1  137 MCDGL/WLKR CI 137  G
TRANSFER AMONG DOC LOCATIONS       1/14/2002 1  125 CHESHIRE CI   125  G
START SERVING SENTENCE (1+)        12/07/2001 1 114 MCDGL/WLKR CI 114  G
TRANSFER AMONG DOC LOCATIONS       11/20/2000 1 114 MCDGL/WLKR CI 114  U
READMISSION, CONTINUED             11/09/2000 1 123 BRIDGEPORT CC 123  U
DISCHARGED, SENTENCE TIME SERVED   10/17/1996 1 900 DISCHARGE     900  G
START SERVING SENTENCE (1+)        10/16/1996 1 122 NEW HAVEN CC  122  G
TRANSFER AMONG DOC LOCATIONS       12/12/1995 1 122 NEW HAVEN CC  122  U
SENTENCE EXPIRED, HOLD ON CT CHARGES 12/02/1995 1 121 HARTFORD CC 121  U
START SERVING SENTENCE (1+)        11/03/1995 1 121 HARTFORD CC   121  L
TRANSFER AMONG DOC LOCATIONS       9/12/1995 1  121 HARTFORD CC   121  U
TRANSFER AMONG DOC LOCATIONS       9/11/1995 1  123 BRIDGEPORT CC 123  U
TRANSFER AMONG DOC LOCATIONS       8/29/1995 2  121 HARTFORD CC   121  U
NEW ENTRY,ACCUSED-BOUND-OVER       8/29/1995 1  123 BRIDGEPORT CC 123  U


CZQB  9/19/2014   CT DEPT OF CORRECTION - ALL MOVEMENTS-RT60        END

TRANSACTION: RT60    NUMBER:  00241224
```

| ![seal] State of Connecticut Department of Correction | | Number 9.3 | Effective Date 02/01/2013 | Page 1 of 11 |
|---|---|---|---|---|
| | ADMINISTRATIVE DIRECTIVE | Supersedes Inmate Admissions, Transfers and Discharges, Supersedes 4/16/2012 | | |
| Approved By | | Title | | |
| *Leo C. Arnone* Commissioner Leo C. Arnone, | | Inmate Admissions, Transfers and Discharges | | |

1. Policy. The Department of Correction shall admit, transfer and discharge inmates in a manner consistent with accountability, safety and security. The Department shall endeavor to release inmates to suitable housing whenever possible. Further, the provisions of this directive concerning compliance with immigration detainers are intended to ensure sound use and preservation of correctional resources. Nothing in this directive reflects a conclusion or doubt with respect to the legality or propriety of any past instance of compliance with an immigration detainer. This policy with respect to immigration detainers has been promulgated solely for the purpose of internal Department of Correction guidance. It is not intended to, does not, and may not be reviewed upon to create any rights, substantive or procedural, that are enforceable by law by any matter, civil or criminal, nor does it place any limitations on otherwise lawful administrative prerogatives of the Department of Correction.

2.

   Authority and Reference.

   A. Public Law 108-79, Prison Rape Elimination Act of 2003.
   B. Connecticut General Statutes, Sections 7-135, 9-46a, 18-81, 18-93, 53-21, 53a-13, 53a-70, 53a-70a, 53a-70b, 53a-71, 53a-72a, 53a-72b, 54-97, 54-102g, 54-102h and 54-102r.
   C. Administrative Directives 3.11, Gate Money; 4.2, Sentence Computation and Time Keeping; 4.2A, Risk Reduction earned Credit; 4.8, Audio/Video-Conferencing, 6.4, Transportation and Community Supervision of Inmates; 6.6, Reporting of Incidents; 6.7, Searches Conducted in Correctional Facilities; 6.10, Inmate Property; 8.1, Scope of Health Services Care; 8.5, Mental Health Services; 8.14, Suicide Prevention and Intervention; 9.1, Population Management; 9.2, Offender Classification; 9.10, Inmate Identification and Movement; 10.7, Inmate Communications; and 10.15, Inmate Personal Identification Procurement and Storage;
   D. American Correctional Association, Standards for the Administration of Correctional Agencies, Second Edition, April 1993, Standards 2-CO-1E-02, 2-CO-4A-01 and 2-CO-4F-01.
   E. American Correctional Association, Standards for Adult Correctional Facilities, Fourth Edition, January 2003, Standards 4-4096, 4-4103, 4-4189, 4-4285, 4-4292, 4-4335, 4-4446.
   F. American Correctional Association, Performance-Based Standards for Adult and Local Detention Facilities, Fourth Edition, June 2004, Standards 4-ALDF-1B-06, 4-ALDF-2A-16, 4-ALDF-4C-22, 4-ALDF-5B-18, 4-ALDF-7D-19 and 4-ALDF-7D-20.
   G. 8 Code of Federal Regulations §287.7(d)
   H. Memorandum Of Understanding between The Connecticut Department of Correction and The Connecticut Department of Public Safety.

3. Definitions and Acronyms. For the purposes stated herein, the following definitions and acronyms apply:

   A. Admission. The intake processing of an inmate into the legal custody of the Commissioner of Correction.
   B. A/P. Admission and Processing.

| Directive Number | Effective Date | Page 2 of 13 |
|---|---|---|
| 9.5 | 02/02/2013 | |

| Title |
|---|
| Inmate Admissions, Transfers and Discharges |

C.  Audio/Video-Conference. The holding of a conference between or among people at remote locations by means of transmitted audio and/or video signals

~~D.   CAIT. Computer-Assisted Inmate Transfer.~~

E.  CSSD. Court Support Services Division.

F.  CSSD Bail Interview Staff. A representative from the Court Support Services Division, Judicial Branch, State of Connecticut.

G.  CAPI. Computer-Assisted Positive Identification.

H.  CHNS. Correctional Hospital Nursing Supervisor.

I.  Closed Account. A discharged inmate's account with no balance.

J.  Commitment. The court order remanding an inmate to the legal custody of the Commissioner of Correction.

K.  CSP. Connecticut State Police.

L.  Detainer. Immigration Detainer-Notice of Action DHS Form 1-247 attachment G.

M.  DHS. Department of Homeland Security.

N.  Direct Admission Facility. A correctional facility designated to receive inmates committed by the courts. The following facilities are designated as direct admission facilities: Bridgeport Correctional Center; Corrigan-Radgowski Correctional Center; Hartford Correctional Center; Manson Youth Institution; New Haven Correctional Center; and, York Correctional Institution.

O.  Discharge. The release of an inmate from the legal custody of the Department of Correction.

P.  DNA. Deoxyribonucleic Acid.

Q.  DOC. Department of Correction.

R.  Facility. An institution of the Connecticut Department of Correction, including all correctional institutions, correctional centers and residential community service programs.

S.  Gate Money. A predetermined amount of money given to an eligible inmate upon discharge.

T.  HIV. Human Immunodeficiency Virus.

U.  ICE. U.S. Immigration and Customs Enforcement.

V.  Inmate. Any person, male or female, adult or minor, residing in a Connecticut Department of Correction facility or contracted community residential facility. This term shall include any person serving a state or federal sentence, any person admitted to await trial in any jurisdiction, and any person admitted pursuant to any other provision of law.

W.  New Admission. The initial intake of an inmate, committed by the courts, to the Department of Correction.

X.  Personal Identification. Forms of personal identification shall include, but are not limited to: a birth certificate; social security card; driver's license; non-driver identification card; state identification card; social services identification card; military identification card; passport; and Form I-551, Permanent Resident Card (i.e., green card). When approved by the Department's Security Division, CN 101503, Certified Secondary Identification Document shall also be considered a form of personal identification. Credit cards and non-official identification papers shall not be considered valid forms of identification.

Y.  Transfer. Movement of an inmate from one correctional unit to another.

Z.  TSC. U.S. DHS, Terrorist Screening Center.

AA.  TSDB. U.S. DHS, Terrorist Screening Database

BB.  Temporary Surrender. An inmate admitted to the Custody of the Department of Correction by the Connecticut State Police, a

| Directive Number | Effective Date | Page 2 of 10 |
|---|---|---|
| 9.3 | 02/02/2013 | |

| Title |
|---|
| Inmate Admissions, Transfers and Discharges |

Connecticut Probation Officer, a Judicial Marshal, an FBI Official
or an authorized official of the United States Department of
Homeland Security, but without a court order.

4.   Admission Area. Each correctional facility shall have an area specifically
designated for admitting, receipt processing and discharging inmates.

Each direct admission facility shall provide for the following
accommodations: bathing and toilet areas; potable water; secure
maintenance of inmate property; access to monitored and privileged
telephone services; private screening and intake areas; and on-line
booking computer terminals.

5.   Admissions. Each unit shall ensure the following:

    A.   Authorized Commitment. One (1) or more of the following legal
    commitments or official documents shall be required prior to the new
    admission of an inmate to a Department facility:

        1.   Continuance Mittimus;
        2.   Judgment Mittimus;
        3.   Remand to Custody;
        4.   Bench Warrant;
        5.   Family Matters Mittimus;
        6.   Capias;
        7.   Governor's Warrant;
        8.   Interstate Agreement on Detainers;
        9.   Temporary Surrender;
        10.  Immigration Detainer-Notice of Action DHS Form I-247; and,
        11.  *Immigration Detainer Detention/ Release Form CN 9308.*

    B.   Temporary Surrenders. The Department of Correction will accept
    inmates on a Temporary Surrender status who have been presented by
    the Connecticut State Police, a Connecticut Probation Officer, a
    Judicial Marshal, an FBI Official or authorized Official of the
    United States Department of Homeland Security.
    The Department of Correction will take custody of an inmate who is
    at a local hospital on a Temporary Surrender status from the
    Connecticut State Police, a Connecticut Probation Officer, a
    Judicial Marshal, an FBI Official or an authorized Official of the
    United States Department of Homeland Security.

    C.   Authorized Transfer. A copy of CN 9307, Inmate Overview Sheet shall
    be presented to the receiving facility prior to an inmate being
    admitted to the facility on a transfer. If CN 9307, Inmate Overview
    Sheet is not available, a copy of the RT-15 transfer form, RT-50
    printout and a CAPI photo of the inmate shall be presented to the
    receiving facility prior to an inmate being admitted to the facility
    on a transfer.

    D.   Identification. Identification of the committing agent or
    transporting staff member shall be established prior to admittance
    to the secured admitting area. Identification of each inmate shall
    be established prior to the admission of the inmate to the custody
    of the receiving correctional facility.

| Departmental Number | Effective Date | Page |
|---|---|---|
| 9.3 | 02/02/2011 | 2 of 8 |

Title

Inmate Admissions, Transfers and Discharges

1. The identification of a new admission inmate shall be verified as the inmate stated on the commitment papers.

2. The identification of a transferred inmate shall be established as that of the inmate on the transfer form in accordance with Administrative Directive 9.10, Inmate Identification and Movement.

E. Arresting/Transporting Officer Documentation. The arresting/transporting officer(s) shall complete Attachment A, Detainee Behavior Questionnaire (Form JD-MS-5) to document the inmate's behavior, physical condition and verbal statements while in the custody of the arresting/transporting officer(s).

F. Search and Shower. Upon admission to a correctional facility each newly admitted or transferred inmate shall be searched in accordance with Administrative Directive 6.7, Searches Conducted in Correctional Facilities, and at a minimum, each new admission inmate shall shower with the appropriate pediculosis control shampoo with the exception of pregnant inmates who shall be provided an alternative process of quelling by a Physician or Physician Extender.

G. Property Inventory. Upon admission to a facility an inmate's property shall be inventoried and processed in accordance with Administrative Directive 6.10, Inmate Property.

H. Inmate Data. Each Unit Administrator shall ensure that the CN 9301, Inmate Admission Form or RT-05A/RT-05R and CN 9306, Inmate Intake Form, are completed and/or updated within three (3) business days for each inmate admitted to the facility. The completed form and/or a hard copy of the RT-50 computer screen shall be placed in the inmate's master file. A trained staff member shall verify and update relevant computer information for each admitted inmate in accordance with Administrative Directive 4.2, Sentence Computation and Time Keeping.

I. Health Evaluation. Prior to admission, each inmate shall be visually screened and interviewed by admitting staff to check the inmate for any obvious health problems in accordance with Administrative Directives 8.1, Scope of Health Services Care and 8.5, Mental Health Services. Custody staff shall review a newly admitted inmate's RT-74 information for any previous medical, mental health or suicide risk information and shall document such information in the "Custody Information" section of Attachment B, Intake Health Screening (HR-001). A copy of the RT-74 information shall be forwarded along with Attachment B, Intake Health Screening (HR-001). Health services staff and/or the Shift Commander shall be contacted upon discovery of any health-related problems to determine if an inmate may be refused admittance to the facility due to the problem. No new admission inmate shall be admitted if a serious health problem exists. It shall be the responsibility of the committing agent to provide treatment prior to admission.

Inmates identified with statistically high risk factors for self-harm shall be referred to the Mental Health Unit. Inmates determined to be detoxifying from drugs or alcohol, medically unstable or mentally ill shall be identified and referred to unit and treatment staff for appropriate follow-up, and shall be considered for specialized housing (i.e., inpatient hospitalization).

| Directive Number | Effective Date | Page # of ## |
|---|---|---|
| 9.5 | 02/02/2013 | |

| Title | |
|---|---|
| | Inmate Admissions, Transfers and Discharges |

Admitting staff shall be aware of any suicide risk factors or behavior and shall report the observation of any suicide factors to the health services staff and/or the Shift Commander in accordance with Administrative Directive 8.14, Suicide Prevention and Intervention. Suicide factors shall include, but are not limited to, the following:

1. First DOC incarceration;
2. Recent loss (e.g., death, divorce, etc.);
3. Auditory/visual hallucinations;
4. Recent transfer or status change;
5. Recent court disappointment;
6. Changes in personal relationships;
7. Detoxifying from drugs and/or alcohol;
8. Changes in physical condition;
9. Deteriorating health condition;
10. Statements made by the inmate;
11. Statements from family, friends or community providers;
12. Threats or perceived threats from other inmates; and,
13. Encouragement from other inmates to commit suicide.

J.  Refusal of Inmate. An inmate may be refused admission to a facility if the conditions of Section 5 of this Directive are not met. Such refusal shall be documented through the completion of CN 6601, Incident Report, with photographs, whenever possible, in accordance with Administrative Directive 6.6, Reporting of Incidents. If an inmate is being held solely on an ICE Detainer and upon completion of Immigration Detainer Detention / Release Form CN9308, it was determined the offender is not an unacceptable risk to public safety based upon the data/info provided, the inmate shall be released.

K.  Health Intake Screening. Attachment B, Intake Health Screening (HR-001) shall be completed by a health services staff member and a custody staff member for each new admission to the Department.

L.  Mail and Phone Regulations. A new admission inmate shall be requested to sign CN 100701, Notification and Acknowledgment for Inmates in accordance with Administrative Directive 10.7, Inmate Communications, prior to making a phone call.

M.  Zero Tolerance Policy. Each inmate shall receive a copy of the Prison Rape Elimination Act Zero Tolerance Policy.

6.  CSSD Bail Interview Staff. Inmates received and booked into Connecticut Correctional facilities on Temporary Surrender status shall be provided access to CSSD for bail interview with the exception of those Federal inmates received from the FBI or from Homeland Security . The following steps shall be completed in administering this procedure for those eligible inmates.

A.  Once the inmate has been received and booked into the facility, the Desk Lieutenant shall be responsible for notifying the CSSD Bail Staff at a telephone number designated by CSSD(see Attachment H)and completing the Temporary Surrender Checklist(Attachment A), to include the following information:

A. Name
B. DOB
C. Charges
D. Is the charge a warrant arrest or domestic case.

| Directive Number | Effective Date | Page 2 of 13 |
|---|---|---|
| 9.3 | 02/02/2011 | |

| Title | |
|---|---|
| Inmate Admissions, Transfers and Discharges | |

E. The current bond amount. Is the bond, police or court set.

F. Any pertinent information of the arrest that the CSSD Bail Staff Representative should be apprised of.

~~G. The arresting agency.~~

B. A message shall be left with the CSSD Bail Staff Representative if contact is not made. When the CSSD Bail Staff returns the telephone call to the Desk Lieutenant, he/she will schedule a time for an audio/video conference with the inmate and provide the CSSD Bail Staff office with an audio/video conference telephone number. In the event there are multiple inmates to be interviewed, the Desk Lieutenant will make every attempt to schedule the audio/video conferences in close time proximity of each other.

C. The Desk Lieutenant shall notify the AP Booking Officer or designated officer with the audio/video conference schedule and ensure the inmates are present at the determined times.

D. Upon completion of the audio/video conference, the CSSD Bail Staff shall notify the Desk Lieutenant of the outcome and fax all corresponding paperwork to the Lieutenant's office. In the event the CSSD Bail Staff makes a Temporary Surrender eligible for release on a written Promise To Appear(PTA), such discharge shall be in accordance with Section 10 of this Directive.

E. At no time will an audio/video conference be cancelled except for a facility emergency. In the event an emergency does cancel an audio/video conference, the Desk Lieutenant will subsequently call the designated number to reschedule the audio/video conference.

F. In the event the CSSD Bail Staff makes a Temporary Surrender eligible for release on a Promise to Appear , such discharge shall be in accordance with Section 10 of this Directive.

G. In the event the offender refuses to cooperate in attending the audio/video conference, the CN 4801 Inmate Refusal to Participate in Audio/Video-Conferencing form shall be completed

7. Transfers. Each inmate shall be transferred in accordance with Administrative Directives 6.4, Transportation and Community Supervision of Inmates; 6.7, Searches Conducted in Correctional Facilities; 6.10, Inmate Property; 9.1, Population Management; 9.2, Offender Classification; and 9.10, Inmate Identification and Movement.

A. Facility Transfers.

1. Transfer of Mental Health 4 or 5 Inmates. The Director of Health and Addiction Services, in collaboration with the Director of Psychiatric Services, shall develop and update, as needed, a protocol for transferring mental health 4 and 5 inmates within the Department. At no time shall the score of a mental health 4 or 5 inmate be lowered prior to the notification of the Director of Psychiatric Services, in accordance with the protocol.

| Directive Number | Effective Date | Page 7 of 13 |
|---|---|---|
| 9.3 | 01/02/2013 | |

| Title | |
|---|---|
| Inmate Admissions, Transfers and Discharges | |

2. Transfer of Inmates Other than Mental Health 4 or 5 Inmates. At a minimum, the following steps shall be followed prior to transferring an inmate, other than a mental health 4 or 5 inmate, to another correctional facility:

   a. the inmate's identification shall be verified in accordance with Administrative Directive 9.10, Inmate Identification and Movement;

   b. the master file shall be reviewed to check for warrants, detainers, pending court cases, release date confirmation, classification ratings and any other information that may affect the transfer;

   c. CN 9307, Inmate Overview Sheet shall be used to transfer an inmate (if CN 9307, Inmate Overview Sheet is not available, a copy of the RT-15 transfer form, RT-50 printout and a CAPI photo of the inmate shall be compared for accuracy and to confirm the inmate's identity prior to transfer);

   d. the transfer authorization shall be confirmed by a custody supervisor;

   e. the CN 9302, Transfer and Discharge Checklist shall be completed; and,

   f. all requirements of sexual offender registration are satisfied when transferring from a higher level facility to a Level 3 facility.

A. Community Transfers. At a minimum, the following steps shall be completed prior to transferring an inmate to the community, to include furloughs:

   1. the inmate's identification shall be verified in accordance with Administrative Directive 9.10, Inmate Identification and Movement;

   2. the master file shall be reviewed to check for warrants, detainers, pending court cases, release date confirmation, classification ratings, and any other information that may effect the transfer;

   3. CN 9307, Inmate Overview Sheet shall be used to transfer an inmate (if CN 9307, Inmate Overview Sheet is not available, a copy of the RT-15 transfer form, RT-50 printout and a CAPI photo of the inmate shall be compared for accuracy and to confirm the inmate's identity prior to transfer);

   4. the transfer authorization shall be confirmed by a custody supervisor;

   5. the RTM1 screen shall be completed and acknowledgment of such shall be confirmed between the sending facility's Unit Administrator or designee and the field office;

   6. the CN 9302, Transfer and Discharge Checklist shall be completed;

   7. all requirements of sexual offender registration and Felony DNA are satisfied, when applicable;

   8. for a transfer to a residential community program, CN 9303, Facility to Residential Program Transfer Acknowledgement, shall be initiated;

   9. for a transfer to a residential community program, the Health Services Unit shall be notified; and,

   10. If the inmate does not have a valid form of identification

| Directive Number | Effective Date | Page 2 of 13. |
|---|---|---|
| 9.5 | 02/07/2013 | |

| Title | |
|---|---|
| | Inmate Admissions, Transfers and Discharges |

upon discharge, identification may be provided in accordance with Administrative Directive 10.15, Inmate Personal Identification Procurement and Storage.

8. Court Trips/Profile Checks. All inmates scheduled for transfer for court purposes shall have a profile check conducted by records staff of the sending facility. The profile check shall ensure the following:

   A. There are no inmates at the receiving facility profiled against the inmates arriving for court. Should a profile exist, staff shall initiate a RT-64 to ensure inmates profiled against one another are not scheduled for court on the same day.

   B. Should profiled inmates be scheduled for court on the same day, records staff from the sending facility shall notify the Records Office at the receiving facility, who shall in turn notify A/P staff of the profiles. A/P staff shall ensure the profiled inmates are kept separate at all times. A/P staff shall relay all profile information verbally to the Judicial Marshals upon their arrival. A/P staff shall also provide profile information in writing to the Judicial Marshals using the special instructions/comment section on CN 9307, Inmate Overview Sheet.

   C. Only inmates who have profiles or co-defendants scheduled to appear at the same court or facility (Bridgeport CC, Corrigan-Radgowski CC, New Haven CC, MacDougall-Walker CI or Hartford CC) shall have their profiles listed in the special instructions/comment section of CN 9307, Inmate Overview Sheet.

   The Offender Classification and Population Management Unit and the Correctional Transportation Unit shall determine the number of profiles and/or co-defendants a facility and/or court house can accommodate without making special arrangements. Facility records staff shall ensure the Court Trip Add-on/Cancellation Form is completed for those inmates not already CAITed for court and shall ensure the procedures outlined in subsections A through C above are followed. Once all sections on the Court Trip Add-on/Cancellation Form are completed, "Clear to Transport" shall be written on the bottom of the Court Trip Add-on/Cancellation Form.

9. Registration of Sexual Offenders/Felony DNA Collection. The Director of Offender Classification and Population Management shall issue and revise as necessary guidelines for the registration of sexual offenders and the collection of a biological sample for the purposes of Felony DNA.

10. Discharges. No inmate shall be discharged from the Department until it is established that the inmate has satisfied all legal commitment requirements or detainer. However, an inmate may not be held beyond the authority of commitment. At a minimum, the following steps shall be followed prior to releasing an inmate unless it is determined that the inmate is an unacceptable risk to public safety upon completion of the Immigration Detainer Retention / Discharge form CN 9308.

   A. A check of the inmate's master file to see that the requirements of sexual offender registration have been satisfied.

   B. The inmate's identity shall be verified and a new photograph taken in accordance with Administrative Directive 9.10, Inmate Identification and Movement. If the inmate does not have a valid form of identification upon discharge, identification may be

| | Effective Date | Page 3 of 13 |
|---|---|---|
| 9.5 | 02/03/2013 | |

| Title | |
|---|---|
| | Inmate Admissions, Transfers and Discharges |

provided in accordance with Administrative Directive 10.15, Inmate Personal Identification Procurement and Storage.

C. A warrant and detainer check shall be conducted.

D. The discharge authorization shall be confirmed by the Unit Administrator or designee.

E. Expiration of sentence shall be verified by the Records Office.

F. CN 9302, Transfer and Discharge Checklist shall be completed and returned to the Records Office for filing in the inmate's master file.

G. CN 9307, Inmate Overview Sheet shall be generated and compared to the inmate being discharged (if CN 9307, Inmate Overview Sheet is not available, a copy of the RT-50 printout along with a CAPI photo of the inmate shall be generated and compared to the inmate being discharged).

H. A copy of CN 9304, Certification of Discharge shall be provided to the inmate. For reentry furloughs, a copy of CN 9304, Certification of Discharge shall be provided by the facility to the inmate upon the inmate's release to the reentry furlough. For Transitional Supervision cases where the inmate has seven (7) or less days to serve on his/her sentence, a copy of CN 9304, Certification of Discharge shall be provided by the facility to the inmate upon the inmate's release to Transitional Supervision.

CN 9304, Certification of Discharge shall contain language informing inmates who have been convicted of a felony and committed to the custody of the Commissioner of Correction and are eligible to have their electoral privileges restored or granted pursuant to Section 9-46a of the Connecticut General Statutes, of the right and procedures to have such privileges restored.

11. Detention/Release of an inmate who is held solely on an ICE Detainer. Upon determination that all legal holds are satisfied, the facility Records Specialist, Shift Supervisor/ Commander or other designated staff shall initiate an ICE Detainer review by utilizing the Immigration Detainer Detention/Release Form CN9308 and by following the ICE review process noted below. The CN9308 will determine if the inmate is an unacceptable risk to public safety. Upon completion of the CN9308, the Shift Supervisor/Commander shall contact the Facility Duty Officer to advise them of the findings. The facility Duty Officer will be responsible for determining if the inmate is an unacceptable risk to public safety and whether the inmate with an ICE Detainer is to be detained as an inmate in the Connecticut Department of Correction.

A. Determination to Detain or Release an inmate using Form CN 9308. The Facility Records Specialist, Shift Supervisor/ Commander or other designated staff shall review and document findings on the Immigration Detainer Detention/ Release Form CN 9308.  If the inmate meets at least one of the criteria listed below, the inmate shall be held unless DOC exercises its discretion to release the inmate with an ICE detainer.  If it is determined the inmate is not an unacceptable risk to public safety based upon the data/information provided, the inmate shall be released.  The information relied upon includes but is not limited to:

1 Prior felony convictions;

2 Any pending Connecticut charges where bond has not been posted;

3 Any outstanding Connecticut warrants;

| Effective Media | | Effective Date | | Page | |
|---|---|---|---|---|---|
| | 9.3 | | 02/02/2013 | | |

| Title | |
|---|---|
| | Inmate Admissions, Transfers and Discharges |

> 4 Identified as a known gang member in the database of the National
> Crime Information Center (NCIC) or any similar database or
> designated as a Security Risk group or Security Risk Group Safety
> Threat in the Department of Correction.
> 5 Identified as a possible match in the terrorist screening
> database or similar database;
> 6 Subject to a final Order of Deportation or Removal issued by the
> United States; and,
> 7 Any other Public Safety concerns.

B. Upon determination by the facility Duty Officer that the inmate is
to be detained or released, ICE shall be notified by contacting the
local ICE office at the telephone number listed on the detainer, or
by contacting the ICE Law Enforcement Support Center in Vermont at
902-872-6020. If the inmate is to be detained, the ICE Agent shall
be informed that the inmate will be held for a maximum of forty
eight (48) hours (excluding Saturdays, Sundays and/or Federal
holidays) from the time of facility intake processing. In the event
that ICE fails to take custody of the inmate within forty-eight (48)
hours (excluding Saturdays, Sundays and/or Federal holidays) the
inmate shall be released. At such time, ICE, the Facility Duty
Officer and the Director of O.C.P.M. shall be notified. Notification
to the Director of O.C.P.M. must be in writing.

C. Under no circumstances shall an inmate being detained solely on
an ICE Detainer be held beyond 48 hours (excluding Saturdays,
Sundays or Federal Holidays).

D. After determination by the Facility Duty Officer that the inmate is
to be detained, the Duty Officer must sign the CN9308 no later than
the next business day and forward the CN 9308 pages 1,2 and 3 and
all the supporting documentation to the Director of O.C.P.M. no
later than 48 hours upon completion.

E. If a determination has been made to detain the inmate, a copy of
Immigration Detainer - Notice of Action DHS Form I-247, and the
Notice of ICE Detainer form CN9309 shall be delivered to the inmate.
Prior to serving the Notice of ICE Detainer upon the inmate, the
delivering staff member will check the box stating that the inmate
is currently being held solely on the basis of an ICE detainer. The
Notice of ICE Detainer, form CN9309, shall be signed by the inmate.
If the inmate refuses to sign the CN9309, the delivering staff
member shall note that on the form.  A copy of the Immigration
Detainer Detention/Release Form CN 9308, and a signed copy of the
Notice of ICE Detainer form CN9309 shall be attached to the ICE
Detainer and placed in section 4 of the master file or in section 2
of a 2 part file.

F. The delivering staff member shall not discuss the Immigration
Detainer with the inmate. If the inmate has any questions regarding
the detainer, the inmate shall be referred to the information on the
back of the detainer, which includes the telephone number of the ICE
Joint Intake Center, and to the information on the Notice of ICE
Detainer, form CN9309.

G. If an inmate is newly admitted or readmitted solely on an ICE
Detainer and determination has been made to release the inmate, only

| Directive Number 9.5 | Effective Date 02/02/2013 | Page 18 of 18 |
|---|---|---|

| Title | Inmate Admissions, Transfers and Discharges |
|---|---|

a copy of the DHS Immigration Detainer – Notice of Action, form I-247, shall be provided to the inmate. A copy of the ICE Detainer shall be placed in section 4 of a master file or section 2 of a 2-part file.

H.  Records will notify the AP staff once a pick up date has been established by ICE. A Connecticut warrant check will be completed prior to ICE assuming custody of the inmate.

I.  The Department of Correction will modify this section as necessary to assure compliance with State or Federal law and or pertinent court decisions.

12.  Health Procedures for Discharge Planning.

A.  Inmate Discharge. Records staff shall develop a 30-day End of Sentence List to the Health Services Unit. The CHNS or designee shall be responsible for completing Attachment C, Inter-Agency Patient Referral Report (W-10) for inmates with a health and/or mental health score of 3 or above. Attachment C, Inter-Agency Patient Referral Report (W-10) shall be completed as close to the discharge date as possible. Attachment C, Inter-Agency Patient Referral Report (W-10) shall be sealed in an envelope with a confidential sticker and hand delivered to the Records Office, where Attachment C, Inter-Agency Patient Referral Report (W-10) shall be attached to the CN 9302, Transfer and Discharge Checklist. The Health Services Unit, at a minimum shall provide a two-week supply of discharge medication to the inmate. In facilities with 24-hour health services coverage, discharge medications shall be dispensed to the inmate with instructions by health services staff upon release. In facilities with less than 24-hour coverage, medication instructions shall be reviewed with the inmate, the day prior to discharge, which shall be documented in the inmate's health record. The discharge medications with written instructions shall be placed in a lockbox in the Shift Commander's office to be provided to the inmate upon discharge.

B.  Community Release. The procedure outlined in subsection A of this Section shall be followed for inmate's being released to a community release program. A hold may be placed on an inmate with a health or mental health 3 or 4 for up to 72 hours so that medications can be delivered prior to release.

C.  Parole Release. Records staff shall notify the Health Services Unit of an inmate being released on parole. The CHNS shall be responsible for completing Attachment C, Inter-Agency Patient Referral Report (W-10) and having it hand delivered to the Records Office in an envelope sealed with a confidential sticker. Medication shall then be ordered to the facility closest to the inmate for pickup.

D.  Inmates Leaving From Court. Inmates shall be provided an Information Card which shall state to call the facility for health information. Inmates currently taking prescription medications shall be provided an opportunity to receive a two-week supply of discharge medications. The contracted health care provider shall make the medication available for pick up, by the inmate, at either the discharging facility or the contracted pharmacy.

E.  Records of Inmates with HIV Infection. Prior to the release of an inmate with HIV infection from a facility to the community, health care staff shall prepare a discharge packet. The information which is provided in the discharge packet shall include all current diagnoses, current problems, treatments which have been provided, the inmate's response to treatment,

| Number 9.9 | Effective . . . . 02/12/2013 | Page 19 of 19 |
|---|---|---|

| Title |
|---|
| Inmate Admissions, Transfers and Discharges |

complications noted, allergies description of condition on discharge, and
any follow-up instructions. A copy of the discharge packet shall be placed
in the inmate's health record as well as being forwarded to the community
~~health care provider. The inmate shall be offered a copy of the discharge~~
packet.

When an inmate with HIV infection is transferred to community release or
discharged from the Department, HIV health information shall be forwarded
to the contract provider's Risk Management Unit.

13.   Closed Accounts. Thirty days prior to discharge, an Attachment D, Request
      for Account Balance Form shall be submitted by a staff member to the
      Inmate Trust Fund Office to release an inmate's balance of account. Upon
      notice of release or discharge and receipt of authorizing documentation, a
      check for the inmate's account balance shall be prepared. The check shall
      be mailed to an address provided by the inmate. The inmate may receive the
      check upon discharge at the facility if 30 days notification is provided.
      The reconciling and check cutting transactions shall close the account.
      Closed account records shall be retained until audited by the Auditors of
      Public Accounts.

14.   Gate Money. Thirty days prior to discharge, an Attachment E, Gate Money
      Request Form shall be submitted, in accordance with Administrative
      Directive 3.11, Gate Money, to the Inmate Trust Fund Office for eligible
      discharging inmates. Upon discharge, the gate money check shall be given
      to the inmate. In the event the inmate does not receive it upon discharge,
      the gate money shall not be forwarded.

15.   Discharge Planning Policy. CN 9305, Discharge Planning Checklist and
      Transportation Log shall be initiated by the Records Office 60 days prior
      to an inmate's discharge. The checklist shall then be forwarded to the
      inmate's unit counselor so arrangements can be made in the following areas
      to facilitate a smooth transition into the community:

      A.   DNA Sample, if applicable;
      B.   Sex Offender Registration, if applicable;
      C.   Medication;
      D.   Transportation;
      E.   Discharge clothing;
      F.   Personal identification;
      G.   Housing;
      H.   Inmate account and gate money; and,
      I.   Aftercare program referrals (i.e., medical, mental health and
           addiction services).

      The completed CN 9305, Discharge Planning Checklist and Transportation Log
      shall be returned to the Records Office for filing in the inmate's master
      file. Inmates released at court shall be provided, when possible, with
      Attachment F, Department of Correction Discharge Resource Card to assist
      with their transition into the community.

      Each facility shall, in accordance with this Directive, develop and
      maintain a unit policy governing the procedure for community release
      placement and discharge to provide a continuum of care into the community.

16.   Discharge resource Card. Each inmate shall receive a Discharge Resource
      Card, Attachment F, at the time of discharge. A/P staff shall document the

| Directive Number | Effective Date |
|---|---|
| 9.3 | 02/3. '11 |

| Title |
|---|
| Inmate Admissions, Transfers and Discharges |

inmate's receipt of the Discharge Resource Card (Attachment F) by checking the appropriate box on CN 9302, Transfer and Discharge Checklist.

Each facility responsible for discharging inmates shall maintain an adequate stock of the Discharge Resource Card on hand. Discharge Resource Cards shall be ordered from the appropriate district warehouse.

17. Forms and Attachments. The following forms and attachments are applicable to this Administrative Directive and shall be utilized for the intended function.

   A. CN 9301, Inmate Admission Form;
   B. CN 9302, Transfer and Discharge Checklist;
   C. CN 9303, Facility to Residential Program Transfer Acknowledgement;
   D. CN 9304, Certification of Discharge;
   E. CN 9305, Discharge Planning Checklist and Transportation Log;
   F. CN 9306, Inmate Intake Form;
   G. CN 9307, Inmate Overview Sheet;
   H. CN 9308, Immigration Detainer Detention / Release Form.
   I. CN 9309, Notice OF Ice Detainer
   J. Attachment A, Detainee Behavior Questionnaire (Form JD-MS-5);
   K. Attachment B, Intake Health Screening (HR-001);
   L. Attachment C, Inter-Agency Patient Referral Report (W-10);
   M. Attachment D, Request for Account Balance Form;
   N. Attachment E, Gate Money Request Form; and;
   O. Attachment F, Department of Correction: Discharge Resource Card;
   P. Attachment G, Immigration Detainer - Notice of Action DHS Form I-247
   Q. Attachment H, Temporary Surrender Checklist.

18. Exceptions. Any exceptions to the procedures in this Administrative Directive shall require prior written approval from the Commissioner of Correction.

# RESPONSE TO REQUEST FOR PRODUCTION 12



Grievance Returned Without Disposition

Connecticut Department of Correction

CN 9609
REV 1/31/09

| Inmate name:  Abrams, D | | Inmate number:   241224 |
|---|---|---|
| Facility/Unit:  137 | Housing unit   J-88 | Date  5/21/13 |

Return log number:    137-0324-13

Your attached grievance is being "Returned Without Disposition" for the following reason(s).

In accordance with Administrative Directive 9.6, Inmate Administrative Remedies, Section 6(E), a grievance may be Returned Without Disposition to the inmate for the following reasons:

1. ☒ An inmate shall attempt to resolve a problem through the inmate Request System prior to filing a grievance. The inmate shall attach CN 9601, Inmate Request Form, containing the employee's response, or explain why it is not attached (see comments below).

2. ☐ A grievance must be filed on CN 9602, Inmate Administrative Remedy Form.

3. ☐ Each grievable matter shall be submitted on a separate CN 9602, Inmate Administrative Remedy Form.

4. ☐ The grievance and the action requested should be stated simply and coherently.

5. ☐ The length of the grievance shall be restricted to the space available on the face of the grievance form and one additional page.

6. ☐ The grievance must be free of obscene or vulgar language or content.

Comments:  Unit Management is supervised by DW Guadarrama. Write to the Deputy Warden for an informal resolution prior to filing a grievance.

You may resubmit your grievance when it is in compliance with Administrative Directive 9.6, Inmate Administrative Remedies.

| Administrative Remedies Coordinator:  _[signature]_ | Date:  5/21/13 |
|---|---|

Inmate Request Form
Connecticut Department of Correction

REV 1/31/06

Inmate name: J. Abrams

Inmate number: 241224

Facility/Unit: MCI

Housing unit: I2-88

Date: 5/22/13

Submitted to: Deputy Warden Guadarroma

Request: On Tues. May 21st, Counselor Scribinski called inmate Williams (lc), the backup laundry man who was also fired because of the alleged "pruno", into his office & was offered a tier man job in L or I pod. He took a tier man job in I pod. This was after Williams' lawyer called and argued how come Williams wasn't afforded due process & the stainless cleaner was not tested to see if it truly was "pruno". This has been my argument to D.Watson all along. He got results because an attorney from the ACLU called for it. I've written DW for a legal call since May 10th & havent gotten one yet (copy of requests enclosed). I was called in to the counselor's office on this same day but I was asked only if I wanted to stay in I pod or moved to L pod. Scribinski →

continue on back if necessary

Previous action taken:

continue on back if necessary

Acted on by (print name):                     Title:

Action taken and/or response:

continue on back if necessary

Staff signature:                              Date:

_____ + _____ is accepted when his _____ does it but not when I ____ & _____ Williams was given a tier men job after he told Claudia. Previously he didn't care if his job was taken he just wanted to remain in the block. Although I'm fighting for my laundry job back, I was never offered any job & have no income coming in. Although I shouldn't have to settle for a tier man job w/ a lower pay scale because I did nothing wrong to lose my laundry job & wasn't afforded due process to clear my name, an alternative should have been offered in the meantime. till the entire process took its course. The fact that Williams is white & _____ was given a job & I wasn't & am black ____ the _____ ___ ___ ____. I'm not playing the race card, it just looks bad.

Although I've been D.R. free for 14 yrs. my history precludes me from working industry or commissary. So a $35/mo job like my laundry job is the highest paying b_ I can get. I believe I am being unjustly targeted by the counselor for speaking up about improper things occurring. My grievance was returned stating had to talk to U first as part of the chain of command.

Guadarrama
Warden
Deputy

Guadarrama
Warden
Deputy

Inmate Performance Evaluation. An inmate shall receive a written performance evaluation, utilizing CN 100101, Inmate Performance Evaluation Form after 30 days in a new or promotional assignment and at least semi-annually thereafter and at such other times as deemed appropriate. A copy of this evaluation shall be placed in the inmate's institutional file. An overall poor evaluation shall result in a counseling session with the inmate and may result in a referral to the classification committee for possible dismissal or reassignment. The inmate shall receive a copy of each written evaluation.

You were re-classified without malice and given another job. The "Pruno" was found in your work station. You and your back up are responsible for the contents of that area. It is my understanding that due to your disciplinary history, it was taken into consideration, thus the reason for this outcome. You could have received a disciplinary repot, lost your job and housing.

DW Harrananam

5/22/13

Connecticut Department of Correction

| Facility/Unit: MCI | Date: 6/15/13 |
|---|---|
| Inmate name: David Abrams | Inmate number: 241884 |

| SECTION 1 | SELECT ADMINISTRATIVE REMEDY A, B or C BELOW |
|---|---|

Follow the instructions (for property claims, complete form CN 9609, Lost/Damaged Property Investigation Form and deposit in the 'Administrative Remedies' box).

A. ☒ I am filing a Grievance.
Prior to filing a grievance, you must attempt informal resolution. Attach a copy of CN 9601, Inmate Request Form with the staff member's response OR state in Section 4 the reason why the form is not attached. Grievances must be filed within 30 days of the occurrence or discovery of the cause of the grievance.          >    Refer to Section 2 below

B. ☐ I am requesting a Health Services Review:    ☐ Diagnosis/Treatment          >    Complete Section 4   >>>>
                                                 ☐ All Other Health Care Issues      >

C. ☐ I am filing an Appeal of a (select one below):
Appeals must be filed within 15 days of notification of a decision.

☐ Disciplinary Action                                              >    Complete Section 3 below
☐ Special Management Decision          ☐ Classification Decision    >
☐ Media Review Committee Decision      ☐ Furlough Decision          >
☐ Security Risk Group Designation      ☐ ADA Decision               >    Complete Section 4   >>>>
☐ Determination of Grievances Process Abuse   ☐ Rejection of Outside Tapes/CDs   >

| SECTION 2 | OTHER REQUIREMENTS FOR USING THE INMATE ADMINISTRATIVE REMEDY PROCEDURE |
|---|---|

Read and comply with the instructions below, then complete Section 4 (State the Problem) on the reverse side. >>>

- Only one request for an administrative remedy must be submitted on this form.
- The request for an administrative remedy and the action sought should be stated simply and coherently.
- The length of this request for an administrative remedy shall be restricted to the space available in Section 4 and one (1) additional 8 1/2 x 11 inch page.
- This request for an administrative remedy must be free of obscene or vulgar language or content.
- This request for an administrative remedy must be filed by the inmate who is personally affected by the subject of the request and shall not be filed by an inmate on behalf of another.
- A repetitive request for administrative remedy may not be filed by the same inmate when a final response has been provided and there has been no change in any circumstances that would affect the response; or when the initial request for an administrative remedy is still in process.

| SECTION 3 | DISCIPLINARY SECTION – Complete this Section for a Disciplinary Appeal ONLY |
|---|---|

You may file a Disciplinary Appeal ONLY if you have pleaded not guilty and have been found guilty at a disciplinary hearing. If so, complete this section, then complete Section 4 (State the Problem) on the reverse side. >>>

| Offense: | Report date: |
|---|---|
| Facility where hearing was conducted: | Date of hearing: |

Did you have an advocate?   ☐ yes   ☐ no   If yes, name of advocate:

Did you identify witness(es) to the investigator?   ☐ yes   ☐ no   Did your witness(es) testify?   ☐ yes   ☐ no

Name(s) of any witness(es):

SECTION 4          STATE THE PROBLEM AND REQUESTED RESOLUTION

Provide any factual information that is applicable, including any responses from staff. State the action that you think should be taken to resolve the problem. PLEASE PRINT. On Thurs. May 9th, my cell was shook down. On Fri. May 10th I was called into Counselor Scribinski's office. She showed me 2 photos - one was a detergent of spotless steel cleaner; the other was a styrofoam cup w/ a small amount of a lime green liquid. Scribinski claimed it was "pruno." I said it was found in the laundry room. I was the laundry man for the unit. Bruno Williams was the back-up. We were responsible for the laundry room although others would have access to it. I refuted Scribinski's claim because I used this alleged "pruno" to clean the washing machines days earlier. I was given 2 options: "a" bad work report or "a" a D.R. I refused the bad work report & opted for a D.R. While pleading my case, Capt. Claudio walked in the office & I insisted the alleged "pruno" be tested. Claudio agreed. C/Os advised there are litmus tests available to determine the presence of alcohol.

On Fri May 17th, Scribinski called me into her office and offered to give the bad work report. I told her this time I would + get a bad work report. I also insisted again that the pruno be tested. She stated the results don't matter because her word was final. So I start writing. The bad work report stated I was being fired due to pruno & old cleaner that smelled like urine found in laundry room. Both Williams & I were fired. Claudio now changed her position & claims those tests aren't done. I argued why am I being denied due process to prove the counselor wrong. I've commented on Scribinski's unprofessional conduct (which is being investigated by Guadarrama) - the counselor herself on a couple of occasions prior to receiving the bad work report. Coincidents

inmate signature: [signature]                        Date: 6/15/13

For all remedies except health services, deposit this form in the Administrative Remedies box.
For a health services issue, deposit this form in the Health Services box.

SECTION 5          DECISION / OFFICIAL USE ONLY – DO NOT WRITE IN THE SPACE BELOW

Date Received: 6/17/13     IGP #: 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     T#:

Disposition: Denied                    Date of Disposition: 8/6/13

Reason:

For A.D. 10.1 section 4A Assignment Requirement. No inmate shall have entitlement or a legitimate expectation to any work, programmatic or educational assignment or compensation..." In addition per A.D. 10.1 section 5J Removal or Dismissal Dismissal for failure to perform, or for a chargeable infraction, may be accompanied by a disciplinary charge in accordance with Administrative Directive 9.5, Code of Penal Discipline. A finding of guilty shall not be required for removal or dismiss at to occur. Removal for other purposes shall not require disciplinary action..." You were removed without malice and re-classified to another job for the reasons stated by Deputy Warden Guadarrama. Your level 1 grievance is denied.

☐ You have exhausted DOC's Administrative Remedies     ☑ This matter may be appealed to Level 2

Signature: [signature]                        Date: 8/16/13

it was Scribinski who shook down the laundry room & discovered the alleged "pruno" states the bad work report. It wasn't until Williams' attorney called the facility on May 21st arguing the lack of a test was he given a tier man job. I was given a shower job on May 24th. I spoke to Capt. Van on June 2nd while he was doing his tour. He knew nothing about the "pruno" discovery & didn't know how the counselor could come up w/ a bad work report out of finding "pruno". I wrote & spoke w/ Deputy Warden Guadarrama. Request is attached.

First off, a D.R. is issued for pruno not a bad work report. Guadarrama states due to my history consideration was taken thus the reason for the bad work report. Consideration is usually given/taken due to one's history after a D.R. is given not before getting one. When has a Class A ticket/ticket A been substituted w/ a bad work report? An overall poor evaluation occurs when poor is checked off on attendance, initiative, productivity, & attitude categories of the report. This wasn't the case w/ me. What category is pruno" classified as on the work report? It has nothing to do w/ performance. I was never counseled about poor performance. Furthermore, the C/Os who observe me not the counselor is in the best position to evaluate my performance. I was never sent to classification to be reclassified. After being fired, I was given a shower job 7 days later. So no part of the directive concerning inmate performance evaluation was properly followed. Although I'm not entitled to laundry job, I would have still had it if I wasn't improperly fired due to incorrect procedures followed, lack of due process, vindictive & retaliatory behavior. One bad work report in a 90 day period is cause for dismissal; two in a 12 month period. I rec'd one in 21 months as laundry worker. Workers of all sorts in the unit have 1 or more & have been allowed to retain their jobs. To resolve

Inmate Grievance Appeal Form - Levels 2/3
Connecticut Department of Correction

CN 9604
REV 1/31/09

| Inmate name: D. Abrams | Inmate number: 241224 |
|---|---|
| Facility/Unit: Cheshire | Housing unit: E307 | Date: 8/16/13 |

IGP number: 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        T number:

Use this form to appeal a Level 1 decision. CN 9602, Inmate Administrative Remedy Form and any attachments must accompany this form; no review will be undertaken if they do not accompany this form. Your appeal must be filed within 5 days of the Level 1 response; deposit it in the "Administrative Remedies" box.

### Appeal of Level 1 Decision to Level 2

I am appealing the Level 1 decision because: one bad work report in 90 days & two in a 12 month period is no cause for dismissal. I rec'd one in 24 months as laundry worker. There were workers in that unit w/ one or more & were allowed to keep their job. Also due process/protocol was not followed in my dismissal I was dismissed for retaliatory reasons which continued w/ my transfer to cheshire 8 days after filing grievance & other paperwork to commissioner. I rec'd denial of grievance today, August 16, 2013.

Inmate signature: _David Abrams_        Date: 8/16/13

### FOR OFFICIAL USE ONLY - LEVEL 2 REVIEW

| Date received: 8/26/13 | Disposition: Denied | Date of disposition: 9/11/13 |
|---|---|---|

Reasons:
You are appealing a level one grievance regarding employment. The response from Warden Murphy is appropriate. There is no evidence that your dismissal was retaliatory as you were removed without malice and reclassified to another position. Your level 2 appeal is denied.

AUG 1 9 2013

Level 2 reviewer: _____

☐ This grievance may be appealed within 5 days to Level 3.

☒ You have exhausted the Department's Administrative Remedies. Appeal to Level 3 will not be answered.

### Appeal of Level 2 Decision to Level 3

I am appealing the Level 2 decision because:

Inmate signature: _____        Date: _____

Deposit your appeal in the "Administrative Remedies" box.

### FOR OFFICIAL USE ONLY - LEVEL 3 REVIEW

| Date received: | Disposition: | Date of disposition: |
|---|---|---|

Reasons:

Level 3 reviewer:



**Administrative Remedy Receipt** $8/26/12$  MWCI

**Connecticut Department of Correction**

CN 9603
REV 1/1/08

| Facility number: 125 | Receipt number: 2439-T |
|---|---|

Inmate name: Abrams, David      Inmate number: 241224

The Admin Remedies Coordinator has received your: ☐ Grievance ☒ Appeal ☐ Property Investigation
and the appropriate procedure will commence in accordance with AD 9.6, Inmate Administrative Remedies.

Administrative Remedies Coordinator: ABC Fitzner      Date: 8/19/13

Distribution: original (white) to Inmate, copy (yellow) to file

# Administrative Remedy Receipt
## Connecticut Department of Correction

CN 9603
REV 1/1/08

Facility number: 135

Receipt number: 2439-T

Inmate name: Abrams, David

Inmate number: 241224

The Admin Remedies Coordinator has received your ☐ Grievance ☒ Appeal ☐ Property Investigation and the appropriate procedure will commence in accordance with AD 9.6, Inmate Administrative Remedies.

Administrative Remedies Coordinator: ARC Fitzner

Date: 8/19/13

Distribution: original (white) to inmate, copy (yellow) to file

# ~~CDMA~~ Inmate Administrative Remedy Form
## ~~TO MACDougall~~ Connecticut Department of Correction

CN 9602
REV 8/22/13

| Facility/Unit: Cheshire | | Date: 9/28/13 |
|---|---|---|
| Inmate name: David Abrams | Inmate number: 241224 | |

## SECTION 1 ~~SELECT ADMINISTRATIVE REMEDY A, B or C BELOW.~~

Follow the instructions *(for property claims, complete form CN 9509, Lost/Damaged Property Investigation Form and deposit in the 'Administrative Remedies' box).*

**A.** ☒ I am filing a Grievance.
Prior to filing a grievance, you must attempt informal resolution. Attach a copy of CN 9601, Inmate Request Form with the staff member's response OR state in Section 4 the reason why the form is not attached. Grievances must be filed within 30 days of the occurrence or discovery of the cause of the grievance. **>** Refer to Section 2 below

**B.** ☐ I am requesting a Health Services Review: ☐ Diagnosis/Treatment **>** Complete Section 4 >>>>
☐ All Other Health Care Issues **>**

**C.** ☐ I am filing an Appeal of a (select one below):
Appeals must be filed within 15 days of notification of a decision.

| | | |
|---|---|---|
| ☐ Disciplinary Action | | **>** Complete Section 3 below |
| ☐ Special Management Decision | ☐ Classification Decision | |
| ☐ Media Review Committee Decision | ☐ Furlough Decision | **>** |
| ☐ Security Risk Group Designation | ☐ ADA Decision | **>** Complete Section 4 >>>> |
| ☐ Determination of Grievance Process Abuse | ☐ Rejection of Outside Tapes/CDs | **>** |
| ☐ Determination of Retroactive RREC Credits | ☐ Rejection of Correspondence | |

## SECTION 2 OTHER REQUIREMENTS FOR USING THE INMATE ADMINISTRATIVE REMEDY PROCEDURE

Read and comply with the instructions below, then complete Section 4 (State the Problem) on the reverse side. >>>

- Only one request for an administrative remedy must be submitted on this form.
- The request for an administrative remedy and the action sought should be stated simply and coherently.
- The length of this request for an administrative remedy shall be restricted to the space available in Section 4 and one (1) additional 8 1/2 x 11 inch page.
- This request for an administrative remedy must be free of obscene or vulgar language or content.
- This request for an administrative remedy must be filed by the inmate who is personally affected by the subject of the request and shall not be filed by an inmate on behalf of another.
- A repetitive request for administrative remedy may not be filed by the same inmate when a final response has been provided and there has been no change in any circumstances that would affect the response; or when the initial request for an administrative remedy is still in process.

## SECTION 3 DISCIPLINARY SECTION – Complete this Section for a Disciplinary Appeal ONLY

You may file a Disciplinary Appeal ONLY if you have pleaded not guilty and have been found guilty at a disciplinary hearing. If so, complete this section; then complete Section 4 (State the Problem) on the reverse side. >>>

| Offense: | Report date: |
|---|---|
| Facility where hearing was conducted: | Date of hearing: |

| Did you have an advocate? ☐ yes ☐ no | If yes, name of advocate: | |
|---|---|---|
| Did you identify witness(es) to the investigator? ☐ yes ☐ no | Did your witness(es) testify? ☐ yes ☐ no |

Name(s) of any witness(es):

CONFIDENTIAL

| (FOR OFFICIAL USE ONLY) | Inmate number: | Housing: |
|---|---|---|

SECTION 4      STATE THE PROBLEM AND REQUESTED RESOLUTION

Provide any factual information that is applicable, including any responses from staff. State the action that you think should be taken to resolve the problem. PLEASE PRINT. I, David Abrams, am housed at Cheshire C.I. I filed a grievance against Counselor Scribinski for firing me as laundry worker for vindictive & retaliatory reasons—grievance #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. That grievance was disposed of on 8/1/13. This grievance stems from the facts of that grievance. I had a meeting w/ Deputy Warden Guadarama & Captain Claudio on June 7, 2013 about my dismissal as the laundry worker & issues w/ Scribinski. I had wrote D.W. Guadarama, D.W. Barrone, Capt. Yan, Lt. Yelnik, Lt. Ramos, Lt. Allison, Capt. Manley, & Commissioner Acmore about that entire situation which angered Claudio. My son dated Armore & Guadarama. In the meeting, Guadarama asked if I had issues w/ misconduct by Scribinski relay them to Claudio. I stated that I didn't feel comfortable speaking to Claudio about Scribinski because they are close. That set off Claudio off. She started yelling & making sarcastic remarks about how I wrote to "everyone under the sun." She also said once we go back to her unit she was moving me to H pod so that I would no longer have a job & I would have to go at the bottom of the waiting list for a job. She was retaliating & being vindictive since I had a shower job. →

| Inmate signature: | Date: 9/23/13 |
|---|---|

For all remedies except health services, deposit this form in the Administrative Remedies box.
For a health services issue, deposit this form in the Health Services box.

SECTION 5      DECISION / OFFICIAL USE ONLY – DO NOT WRITE IN THE SPACE BELOW

| Date Received: | IGP #: | T#: |
|---|---|---|

| Disposition: | Date of Disposition: |
|---|---|

Reason:

| ☐ You have exhausted DOC's Administrative Remedies. | ☐ This matter may be appealed to: |
|---|---|
| Signature: | Date: |

Once she left the meeting, I explained to Guedarama how
Claudio was being spiteful just because I went "over her head"
about Scribinski. Claudio couldn't be objective regarding
Scribinski. Scribinski had Claudio's blessing of alot of the
Nonsense she carried on w/ in the unit. They collaborated
to abuse their "woman power" on the inmates in a male
facility. I explained all this to Guedarama. Guedarama
told me not to worry that he would talk to Claudio
with how messing up the unit which would have caused me
to lose my Job. He didn't understand why she was coming
at me the way she was & I was D.R. free for 12 years.
He did explain to me that its understandable that Claudio was
upset because by "going over her head" it made it appear like
she wasn't doing her Job. I explained to him that Claudio
went overboard w/ many things because she suffered from a
"Napoleon complex". Whatever Guedarama said to Claudio worked
because I wasn't moved outta the unit as she had threatened.
I filed a grievance on Scribinski on June 15, 2013
w/ statements against Claudio else. I was transferred out of MacDougall
to Cheshire on June 25, 2013 obviously in retaliation for all
the paperwork I submitted against these 2 power
hungry, ego driven, truth challenged women.
    Since I have to wait in excess of 8 months for a
job here at Cheshire I think I should be transferred back
to MacDougall & given a Job immediately obviously not in
one of their units where I would suffer more backlash.

## Administrative Remedy Receipt
### Connecticut Department of Correction

CN 9603
REV 1/1/08

Facility number: 125

Receipt number: 2482-T-137

Inmate name: Abrams, David Level

Inmate number: 241224

The Admin Remedies Coordinator has received your: ☒ Grievance ☐ Appeal ☐ Property Investigation and the appropriate procedure will commence in accordance with AD 9.6, Inmate Administrative Remedies.

Administrative Remedies Coordinator: Hizner

Date: 10/2/13

Distribution: original (white) to inmate, copy (yellow) to file

Board [illegible] [illegible]
Cheshire Correctional Institution
900 Highland Avenue
Cheshire, CT 06410

September 30, 2014

DeAnn S. Varvnes, Asst. Attorney
      General
Office of the Attorney General
110 Sherman Street
Hartford, CT 06105

Re:  Abrams v. Counselor Scribinski, et al
     Civil Action No. 3:14-cv-56 (JCH)

Dear Ms. Varvnes:

        I am in receipt of your responses to the discovery
request I had sent you back on July 29, 2014 involving the
three defendants. Be advised that your responses are totally
unacceptable on the grounds that you had altered the
interrogatories and request for production for each of the defendants
despite being warned not to do so. Additionally, the responses were
obstructive, evasive and contain baseless objections under the
discovery rules. The deceitful responses and/or objections will not
be tolerated by me. You have until October 9, 2014 to
provide adequate responses to my discovery request (interrogatories
and production of documents) or I will seek the intervention
of the federal courts to compel the defendants compliance
to the discovery rules.

                                              /S/

cc: copy one (1)                              [ATTACHMENT]